UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Googla Home Decor LLC, Gene Kruglyak,
Peter Papayiannis, and Marianna Ray,

                        Plaintiffs,                    09-CV-1049
                                                       (CPS)(RML)

        - against -
                                                       MEMORANDUM OPINION
Igor Uzkiy, Ace Decore International,                  AND ORDER
Inc., Anna Shamray, Nick Fanda, Igor
Stapanov, Jon Doe(s), and Deitsch
Realty Co.,

                        Defendants.

----------------------------------------X

SIFTON, Senior Judge.

        On March 13, 2009, plaintiffs Gene Kruglyak, Peter

Papayiannis, Marianna Ray, and Googla Home Décor, LLC ("Googla")

commenced this action against defendants Igor Uzkiy, Ace Decore

International Inc. ("Ace"), Anna Shamray, Nick Fanda, Igor

Stapanov, Deitsch Realty Co. ("Dietsch Realty"), and other as-

yet-unknown defendants.  Plaintiffs assert claims of (1) false

designation of origin and/or false descriptions pursuant to 15

U.S.C. § 1125(a); (2) false designation of origin and/or false

descriptions leading to trademark dilution pursuant to 15 U.S.C.

§ 1125(c); (3) common law trademark infringement; (4) trademark

and trade name violations of §§ 133, 392-b, and 396-396t of New

York's General Business Law; (5) trademark dilution and injury to

business reputation pursuant to § 360-*l* of New York's General

Business Law; (6) violation of the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; (7) breach of fiduciary duty; (8) injurious falsehood; (9) interference with contract and/or inducing breach of contract; (10) interference with prospective economic advantage; (11) misappropriation; (12) forcible or unlawful entry and/or wrongful eviction; (13) fraud; (14) negligent misrepresentation; (15) trespass to land; (16) trespass to chattels; and (17) conversion and/or wrongful taking. Plaintiffs seek (but have not moved for) a preliminary injunction, eviction of defendants, the immediate return of plaintiffs' property, compensation for lost and damaged property, an accounting and payment of gains, punitive damages, treble damages under RICO, attorney's fees, costs, and interest. Presently before this Court is defendants' motion to dismiss this action, or in the alternative, to stay this action and compel arbitration of plaintiffs' claims, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3 and 4. For the reasons that follow, the motion is granted.

## BACKGROUND

The following facts are taken from the complaint. For purposes of this motion, the allegations of the complaint are assumed to be true. *See Marcus v. Masucci*, 118 F. Supp. 2d 453, 454 (S.D.N.Y. 2000) (citing *Cargill Intern. S.A. v. M/T PAVEL DYBENKO*, 991 F.2d 1012, 1019 (2d Cir. 1993)).

Plaintiff Googla is a limited liability company formed and organized under New York law, with its principal place of business in Brooklyn, New York. Compl. ¶ 17. Plaintiff Gene Kruglyak is a New York resident who currently holds a 50% stake in Googla and serves as Googla's "executive officer." *Id.* ¶ 18. Plaintiff Peter Papayiannis is a New York resident and a holder of 25% of Googla's shares, who formerly served as Googla's President and Director of Management Information Systems. *Id.* ¶ 19. Plaintiff Marianna Ray, also a New York resident, was a 25% Googla shareholder until she transferred her 25% share to plaintiff Kruglyak in the beginning of 2007. *Id.* ¶ 20.

Defendant Igor Uzkiy is a Russian citizen who maintains a residence in Brooklyn, New York, and is authorized to work and conduct business in the United States. *Id.* ¶ 21. Defendant Uzkiy wholly owns Defendant Ace. Defendant Ace is a domestic business corporation formed and organized under New York law, with the same principal place of business as plaintiff Googla in Brooklyn, New York. *Id.* ¶ 22. Defendant Anna Shamray is a New York resident who serves as Ace's Operating Manager and holds a power of attorney to act on Ace's behalf. *Id.* ¶ 23. Defendant Nick Fanda, also a New York resident, works as a sales manager for Ace, but has represented himself to be a Googla sales manager on at least one occasion. *Id.* ¶ 24. Defendant Igor Stapanov is a New York resident and an Ace employee. *Id.* ¶ 25. Defendant

Deitsch Realty is a corporation formed under New York law, with its principal place of business located in Brooklyn, New York. Defendant Deitsch Realty is the landlord or owner of plaintiff Googla's principal place of business. *Id.* ¶ 26.

In April 2005, plaintiffs Kruglyak, Papayiannis, Ray, and defendant Uzkiy formed Googla. *Id.* ¶¶ 17, 28. According to the complaint, at formation, Googla's shares were split evenly between each of plaintiffs Kruglyak, Papayiannis, Ray, and defendant Uzkiy. *Id.* ¶ 30. At the beginning of 2007, plaintiff Ray transferred her shares to plaintiff Kruglyak. *Id.* ¶ 30. As a result of the transfer, plaintiffs allege that the current apportionment of Googla shares is as follows: plaintiff Kruglyak, 50%; plaintiff Papayiannis, 25%; plaintiff Ray, 0%; defendant Uzkiy, 25%. *Id.*

According to the complaint, Googla's Operating Agreement requires the agreement of a majority of shares to commit Googla to any action. *Id.* ¶ 33. At no time did defendant Uzkiy control a majority of shares. *Id.* ¶ 38. Thus, defendant Uzkiy could not take actions on behalf of Googla without the consent of any of the individual plaintiffs. *Id.* The individual plaintiffs did not grant defendant Uzkiy any operational control of Googla. *Id.* ¶ 34. The arrangement between the individual plaintiffs and defendant Uzkiy was that the individual plaintiffs would be responsible for the day-to-day operations of Googla, while

defendant Uzkiy would remain in Russia and provide capital. *Id.* ¶ 40.

From Googla's formation until October 2007, plaintiff Papayiannis was charged with "executive decision making" power. *Id.* ¶ 35. In October 2007, plaintiff Papayiannis resigned his position, and plaintiff Kruglyak assumed executive authority. *Id.* ¶¶ 19, 35. Plaintiff Kruglyak is currently the sole Googla shareholder with this authority. *Id.* ¶ 36.

At some point in time, the individual plaintiffs created certain trade names, trade dress, service marks, logos and emblems, including the trade names "Googla Home Décor" and "Googla," as well as a "Googla" logo. *Id.* ¶¶ 41-42; *see also id.* Ex. A. (copy of "Googla" logo). According to the complaint, in New York, the name "Googla" has become closely associated with and identified by the public as plaintiff Googla. *Id.* ¶ 44. While the individual plaintiffs did not register Googla's trademarks and service marks with the United States Patent and Trademark Office, they allege they own a common law trademark for the Googla mark and variations thereof. *Id.* ¶ 46.

In June 2008, defendant Uzkiy began "operating" Ace, an entity existing at the same location as Googla and wholly owned and controlled by defendant Uzkiy, allegedly for the purpose of seizing Googla's assets. *Id.* ¶¶ 57, 64. Defendant Uzkiy represented to the individual plaintiffs that defendant Ace would

function under Googla's control either as a subsidiary or an
associated corporation. *Id.* ¶¶ 57, 59, 62. At defendant Uzkiy's
urging in the fall of 2008, plaintiff Kruglyak hired defendant
Shamray to be Googla's office assistant, unaware that defendant
Shamray possessed power of attorney to act on defendant Ace's
behalf. *Id.* ¶¶ 67, 68. Under the guise of providing secretarial
services, defendant Shamray observed and reported on Googla's and
plaintiff Kruglyak's activities to defendant Uzkiy on a near-
hourly basis on her cell phone. *Id.* ¶¶ 70, 71. Shortly
thereafter, plaintiff Kruglyak terminated defendant Shamray's
employment because of her constant phone calls and failure to
perform substantive work for Googla. *Id.* ¶ 72. Defendant
Shamray then began working for defendant Ace as its secretary and
manager. *Id.* ¶ 73. During this time, some or all of the
defendants took stock from Googla's inventory, copied its
corporate records and client contact lists, and misappropriated
Googla's confidential and proprietary information for defendant
Ace's benefit without plaintiffs' knowledge or permission. *Id.* ¶
74.

    In October 2008, defendant Ace began selling items from
Googla's inventory, representing itself as an agent of Googla,
without plaintiffs' knowledge or authorization and without
compensating plaintiffs. *Id.* ¶¶ 92, 108-09. Defendants appear
to have to sold at least $13,188 of Googla's furniture and

inventory in October 2008, at least $8,264 in November 2008, at least $36,226 in December 2008, and at least $40,000 in each of January and February 2009. *Id.* ¶¶ 93-95, 97. Defendants continue to sell Googla's inventory in other states and overseas. *Id.* ¶¶ 96, 98-99. The amount sold appears to be increasing from month to month. *Id.* ¶ 96. To facilitate sale of Googla's inventory, defendant Ace has also provided business cards to its employees indicating that they work for Googla. *Id.* ¶ 105.

On or about October 27, 2008, some or all of the defendants entered into a side deal with defendant Deitsch Realty to transfer Googla's lease to defendants. *Id.* ¶ 81. Prior to the side deal, plaintiffs Kruglyak and Googla were renting Googla's business premises from defendant Deitsch Realty, with the lease terminating on or about June 30, 2008. *Id.* ¶ 75. Plaintiffs Kruglyak and Googla negotiated a lowered monthly rent of $9,000 to continue the rental relationship. *Id.* ¶ 76. While waiting to execute an updated lease memorializing the rent reduction, plaintiffs believed the lease was in effect and continued making rental payments for the warehouse and office premises. *Id.* ¶¶ 78, 79. However, pursuant to the terms of the side deal between defendant Ace and defendant Deitsch Realty, defendant Deitsch Realty transferred possession of Googla's premises to defendant Ace for the period starting in November 2008 through September 2009 for a monthly rent of $15,000. *Id.* ¶ 82. Defendant Deitsch

Realty also transferred the benefit of Googla's $42,000 security deposits to defendant Ace. *Id.* ¶ 83. Plaintiffs never agreed to the side agreement between defendant Ace and defendant Deitsch Realty. *Id.* ¶ 85.

On January 27, 2009, defendants sent out one or more mass mailings to Googla's entire client list, including false statements indicating that defendant Ace was now "performing" the work that Googla had contracted for and directions to contact defendant Igor Stepanov, an Ace "kitchen representative," "in order to negotiate future work, contract and financial matters at your project." *Id.* ¶¶ 129, 131-32, 137. Through these mailings, defendants sought to leverage half-completed projects to force clients to pay more for services already contracted for with Googla. *Id.* ¶ 136. These letters, all issued under the name of defendant Shamray as Ace's General Manager, had a substantially damaging effect on Googla's goodwill and reputation in the business community. *Id.* ¶¶ 139, 142.

On January 31, 2009, plaintiffs Papayiannis and Ray saw a booth containing a large Googla sign, trademark, logo, and other Googla trade dress at a multi-day trade show they were attending in New Jersey. *Id.* ¶¶ 111, 115. The booth contained Googla product catalogs and marketing materials that plaintiffs Papayiannis and Ray had created years ago, as well as a "floor model" furniture set that plaintiff Papayiannis had designed and

worked on. *Id.* ¶¶ 116, 118. Plaintiffs were not aware of and had not authorized the use of Googla's name and other materials at this trade show. *Id.* ¶¶ 119, 120. On February 2, 2009, plaintiff Papayiannis saw defendants Shamray and Fanda outside the trade show convention floor and confronted them about their use of Googla materials. *Id.* ¶¶ 122, 123. Defendants Shamray and Fanda "mumbled something unintelligible" and "hurried away." *Id.* ¶ 124. Plaintiffs Papayiannis and Ray later obtained a copy of the trade materials that defendants Shamray and Fanda were using to sell Googla's inventory at the trade show. *Id.* ¶ 125. Defendant Fanda had also been passing out business cards identifying himself as Googla Home Décor's Sales Manager. *Id.* ¶ 126.

At some point during the week of February 2, 2009, defendants changed the locks on Googla's offices and warehouse. *Id.* ¶¶ 143, 147. Since that time, plaintiffs have been unable to access Googla's office and inventory. *Id.* ¶ 143. Defendants have effectively seized Googla's property, including, but not limited to: (1) proprietary client information records and contact lists; (2) corporate files necessary to continue business operations; (3) electronic and hard copies of proprietary sales and inventory systems and other intellectual property created by and for Googla; (4) proprietary trade and advertising materials; (5) proprietary furniture designs and product designs; (6) all of

Googla's inventory, valued in excess of $1.4 million, consisting mostly of furniture, assembly materials, equipment, and all other tangible aspects of Googla's business operations. *Id.* ¶¶ 146, 147. Defendants have sold and are continuing to sell Googla's inventory, acting as both Googla and Ace. *Id.* ¶ 149. Employees of defendant Ace have told plaintiff Kruglyak that he "would have to pay" to reacquire Googla's inventory. *Id.* ¶ 153. In addition, the individual plaintiffs are now unable to recover certain amounts owed to them by plaintiff Googla, including payment for services rendered, indemnification for certain legal fees, indemnification for potential contingent damages from other legal action, and other costs that were to be paid over time by Googla's business operations. *Id.* ¶¶ 151, 152.

Plaintiffs commenced this action on March 13, 2009. This motion followed on May 28, 2009.

## DISCUSSION

### I. Standard for Motion to Dismiss Pursuant to the FAA

The FAA states that "an agreement in writing to submit to arbitration an existing controversy arising out of . . . a contract, transaction, or refusal [to perform the whole or any part thereof], shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When a party moves to dismiss or to stay proceedings and compel arbitration, a court must make

the following determinations: (1) whether the parties agreed to arbitrate; (2) the scope of the arbitration agreement; (3) whether Congress intended the federal statutory claims asserted by plaintiff, if any, to be nonarbitrable; and (4) whether the court should stay the balance of the proceedings pending arbitration if not all claims are arbitrable. *JLM Industries, Inc. v. Stolt-Nielsen SA,* 387 F.3d 163, 169 (2d Cir. 2004).

Here, there is no dispute that the Operating Agreement contains a valid agreement to arbitrate. Nor do the parties contend that Congress intended any of their federal statutory claims to be nonarbitrable.[1] Accordingly, I turn directly to the remaining consideration.[2]

## II. Scope of Arbitration Agreement

At issue here is whether the arbitration clause in the Operating Agreement covers the instant dispute. In accordance with the FAA's expression of a strong federal policy favoring arbitration, courts "construe arbitration clauses as broadly as

---

[1] The burden of showing that Congress intended a federal statutory claim to be nonarbitrable rests with the party opposing arbitration. *Oldroyd v. Elmira Sav. Bank, FSB,* 134 F.3d 72, 78 (2d Cir. 1998) (internal citations omitted). Here, plaintiffs make no such showing with respect to any of the federal statutory claims they raise in their complaint. In any event, all of plaintiffs' claims brought under federal statutes -- namely, the civil RICO and trademark claims -- are arbitrable. *See Kerr-McGee Refining Corp. v. M/T Triumph,* 924 F.2d 467, 469 (2d Cir. 1991) ("There is no longer any doubt that a RICO claim is arbitrable."); *Acquaire v. Canada Dry Bottling,* 906 F. Supp. 819, 837-38 (E.D.N.Y. 1995) (noting that courts have upheld arbitration awards rendered under the Lanham Act).

[2] Because, as discussed herein, I find that all of plaintiffs' claims are subject to arbitration, there is no issue regarding whether to stay the nonarbitrable balance of proceedings pending arbitration.

possible and resolve any doubts concerning the scope of arbitrable issues in favor of arbitration." *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (internal quotation marks and citations omitted). "[L]anguage excluding certain disputes from arbitration must be 'clear and unambiguous' or 'unmistakably clear[.]'" *Genesco, Inc. v. T. Kakiuchi & Co.*, *Ltd.,* 815 F.2d 840, 847 (2d Cir. 1987).

## A.  *Broad v. Narrow Nature of Clause*

As an initial matter, I must determine whether the arbitration clause is "broad" or "narrow."  A broad clause "creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute." *Oldroyd*, 134 F.3d at 76 (internal quotation marks and citation omitted).  A "clause . . . submitting to arbitration '[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause." *Collins & Aikman Prod. Co. v. Bldg Sys., Inc.,* 58 F.3d 16, 20 (2d Cir. 1995) (quoting relevant arbitration clause).  Conversely, the phrase "arising under" is the only phrase recognized by the Second Circuit Court of Appeals as possibly showing the intent of the parties that an arbitration clause be narrowly construed.  *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 225 (2d Cir. 2001).

The arbitration clause in Googla's Operating Agreement states that "[a]ny dispute, controversy, or claim arising out of or in connection with this Agreement . . . shall, upon the request of any party involved, be submitted to, and settled by, arbitration[.]" *See* Def. Memo. Ex. A (copy of Operating Agreement) at ¶ 23. This clause employs the "arising out of or relating to" language (albeit here, the precise language is "arising out of or in connection with") employed in the paradigmatically broad clause described in *Collins*. Accordingly, the Operating Agreement's arbitration clause is broad, and therefore, a strong presumption of arbitrability exists.

**B.** *Factual Analysis*

In determining whether a dispute falls within the scope of an arbitration clause, courts must "focus on the factual allegations in the complaint rather than the legal causes of action asserted." *Genesco, Inc.*, 815 F.2d at 846. The Court of Appeals has also directed courts to consider whether the dispute implicates issues of contract construction or the parties' rights and obligations under the contract. *Collins*, 58 F.3d at 23. If the answer is yes, then the dispute, even if it appears collateral, falls within the scope of the arbitration clause. *Id.* Conversely, claims that present questions involving neither construction of the contract nor the parties' rights and obligations under it are beyond the scope of the arbitration

clause.  *Id.*  This inquiry is fact-driven and respects the

parties' reasonable expectations in forming the contract.[3]

Examining the factual allegations in the Complaint, I find

that the present dispute concerns the parties' rights to perform

certain actions under the Operating Agreement.  Each of

plaintiffs' claims derives from the argument that defendants are

not authorized under the Operating Agreement to perform any of

the actions to which plaintiffs object because defendants never

controlled a majority of Googla's shares.[4]  While defendant Uzkiy

maintains that, contrary to plaintiffs' allegations, he did at

some point control a majority of the shares, this issue of fact

does not change the nature of the dispute between the parties.

---

[3] Defendants assert that the proper inquiry is whether the factual
allegations in the complaint "touch matters covered by the parties'
agreements."  *Genesco*, 815 F.2d at 846.  However, "[i]t is not particularly
helpful . . . to recite the various rules governing whether factual
allegations subject a matter to arbitration: some of these rules ask, for
example, whether the factual allegations 'touch matters' governed by the
parties' contracts; whether the allegations 'arise from' contract performance;
whether they are 'integrally linked' to the contractual relation; or whether
they somehow 'pertain to' it.  None of these formulations itself yields a
principled way of here deciding whether these claims should be sent to
arbitration."  *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d
20, 28 (2d Cir. 1995) (internal citations omitted).  Instead, as with any
contractual matter, the "main concern in deciding the scope of arbitration
agreements is to faithfully reflect the reasonable expectations of those who
commit themselves to be bound by them."  *Id.*; *accord XL Capital, Ltd. v.
Kronenberg*, 145 Fed. Appx. 384, 385 (2d Cir. 2005).

[4] For example, plaintiffs' various trademark claims, including federal
and state law claims for trademark infringement, dilution, and false
designation of origin, each depend upon the assertion that defendants were not
authorized to use Googla trademarks under the Operating Agreement.  Similarly,
plaintiffs' claims alleging various forms of fraud, theft, trespass, and
contractual interference each assume that defendants required plaintiffs'
consent or authorization to perform any of the actions to which plaintiffs
object, and the basis upon which plaintiffs claim such consent or
authorization was required is plaintiffs' construction of the Operating
Agreement.

Because each of plaintiffs' claims is premised upon this core
dispute, the resolution of which requires construction of the
Operating Agreement, each of plaintiffs' claims falls within the
scope of the arbitration clause.

Plaintiffs nevertheless attempt to rebut the strong
presumption of arbitrability created by the arbitration clause's
broad construction.  First, they claim that the Operating
Agreement does not specify how the partnership is to be managed,
which they argue is at the heart of the dispute.[5]  However, the
Operating Agreement does in fact address how the partnership is
to be managed:  it requires the agreement of a majority of shares
to commit Googla to any action.  Compl. ¶ 33.  Accordingly, even
if plaintiffs' characterization of the substance of their claims
is correct, their claims still fall within the scope of the
arbitration clause.

Second, plaintiffs argue that at least one of their claims
arises out of a personal promise made by defendant Uzkiy to
plaintiff Kruglyak to fund Googla's business in exchange for
plaintiff Kruglyak's marketing expertise, which promise was

---

[5] Plaintiffs also claim that the Googla Operating Agreement "fails in
almost every regard to be an operating agreement as contemplated by the New
York Limited Liability Company Act," and that, as a result, "the agreement
lacks the fundamental details necessary to make it an operating agreement."
Pl.'s Br. In Opp'n at 5.  Assuming, however, that the Operating Agreement does
not qualify as an operating agreement within the meaning of the Limited
Liability Company Act, plaintiffs do not explain how or why this failure is
relevant to defendants' motion to compel arbitration.  In any event,
plaintiffs do not dispute that the Operating Agreement is a valid contract
between the parties that contains a valid arbitration agreement.

allegedly made entirely separately from the promises made in the
Operating Agreement.  According to plaintiffs, the breach of
fiduciary duty claim arises from this unrelated promise, and
therefore, the fiduciary duty claim is not within the scope of
the Operating Agreement's arbitration clause.  This argument is
unpersuasive.  In the Complaint, plaintiffs' breach of duty claim
alleges that defendant Uzkiy owed Googla a fiduciary duty as a
minority shareholder and that he owed plaintiffs Kruglyak and
Papayiannis duties as they were "other shareholders of Googla."
Compl. ¶¶ 222, 223, 225.  Nowhere does the Complaint allege that
defendant Uzkiy owed a fiduciary duty to plaintiffs on the basis
of a promise outside of his relationship to plaintiffs as Googla
shareholders.[6]  Therefore, because the factual allegations in the
Complaint illustrate a dispute that implicates the parties'
rights and obligations under the Operating Agreement, resolving
all doubts in favor of arbitration, I find that plaintiffs'
claims fall within the scope of the arbitration clause.

Accordingly, because I conclude that all of plaintiffs'
claims are subject to arbitration under the terms of the
Operating Agreement, I dismiss plaintiffs' complaint in its
entirety.  *See, e.g., Sinnett v. Friendly Ice Cream Corp.*, 319 F.

---

[6] To the extent plaintiffs seek to alter the fiduciary duty claim in
their brief, they are not permitted to do so.  *See Disabled in Action of
Metro. New York v. Trump Intern. Hotel & Tower,* No. 01-CV-05518, 2003 WL
1751785, at *13 (S.D.N.Y. Apr. 2, 2003) ("A claim for relief may not be
amended by the briefs in opposition to a motion to dismiss.") (internal
quotation marks and citation omitted).

Supp. 2d 439, 445 (S.D.N.Y. 2004) ("There is no reason for this Court to stay this action because all of [plaintiff's] claims are subject to resolution through arbitration, rather than litigation, and there are no remaining claims properly before this Court.").

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted. The Clerk is directed to transmit a copy of the within to the parties and the assigned Magistrate Judge.

SO ORDERED.

Dated:     Brooklyn, New York
           September 8, 2009

By: /s/ Charles P. Sifton (electronically signed)
              United States District Judge